## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Sorrento Therapeutics, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90085 (CML)<br><br>(Jointly Administered) |
| The Official Committee of Equity Securities Holders,<br><br>Appellant,<br><br>v.<br><br>Sorrento Therapeutics, Inc., *et al*. and Elizabeth C. Freeman,<br><br>Appellees. | Civil Action No.: 4:24-cv-00031 (LHR) |

## APPELLANT'S OPENING BRIEF

Appeal from the United States Bankruptcy Court for the Southern District of Texas
Honorable Christopher M. Lopez, United States Bankruptcy Judge Presiding
Bankruptcy Case No. 23-90085

Andrew K. Glenn
Kurt A. Mayr
Shai Schmidt
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com
　　　　kmayr@glennagre.com
　　　　sschmidt@glennagre.com

*Counsel to Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

JUDICIAL STATEMENT ....................................................................................................... 1

STATEMENT OF ISSUES ...................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 1

THE NATURE AND STAGE OF THE PROCEEDING ................................................... 1

RELEVANT BACKGROUND ................................................................................................ 3

    I.    The Equity Committee and the Chapter 11 Cases. ........................................... 3

    II.   Elizabeth Freeman's Relationship with Judge Jones. ..................................... 3

    III.  Ms. Freeman's Involvement in the Chapter 11 Cases. ................................... 7

    IV.  The Equity Committee Requests Additional Information
         Concerning Ms. Freeman's Involvement in the Chapter 11 Cases. ............... 12

    V.   The Court Denies the Rule 2004 Motion. ....................................................... 15

SUMMARY OF ARGUMENT .............................................................................................. 16

ARGUMENT ............................................................................................................................ 16

    I.    Rule 2004 Legal Standards. .............................................................................. 16

    II.   The Bankruptcy Court Erred by Denying the Rule 2004 Motion. ................ 17

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Appalachian Basin Cap. LLC*,
2022 WL 2111815 (Bankr. N.D. Ohio June 9, 2022) ............................................................. 22

*In re Barnes*,
365 B.R. 1 (Bankr. D.D.C. 2007) ........................................................................................... 19

*In re China Fishery Grp. Ltd.,* Case No. 16-11895 (JLG),
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) .............................................................. 18

*In re Correra*,
589 B.R. 76 (Bankr. N.D. Tex. 2018) ....................................................................... 17, 18, 19

*In re Countrywide Home Loans, Inc.*,
384 B.R. 373 (Bankr. W.D. Pa. 2008) .................................................................................... 20

*In re Drexel Burnham Lambert Grp., Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991) .................................................................................... 18

*In re Gawker Media LLC*,
2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ....................................................... 18, 22

*In re Kipp*,
86 B.R. 490 (Bankr. W.D. Tex. 1988) ..................................................................................... 17

*In re Martin*,
403 B.R. 359 (Bankr. D.S.C. 2009) ........................................................................................ 19

*In re Merrill*,
2010 WL 985231 (Bankr. W.D. Tex. Mar. 16, 2010) ............................................................. 19

*In re Millennium Lab Holdings II, LLC*,
562 B.R. 614 (Bankr. D. Del. 2016) ....................................................................................... 18

*In re Star Ambulance Serv., LLC*,
540 B.R. 251 (Bankr. S.D. Tex. 2015) .................................................................................... 21

*In re Teleglobe Comm'ns Corp.*,
493 F.3d 345 (3d Cir. 2007) .................................................................................................... 17

*In re Three Arrows Cap., Ltd.*,
647 B.R. 440 (Bankr. S.D.N.Y. 2022) .................................................................................... 21

*Young v. DiFerrante*,
  416 B.R. 612 (S.D. Tex. 2009) ................................................................. 1

**Statutes**

28 U.S.C. § 157 ........................................................................................ 1

28 U.S.C. § 158(a) .................................................................................. 1

28 U.S.C. § 1334 ...................................................................................... 1

11 U.S.C. § 1129(a)(3) ............................................................................ 21

**Rules**

Fed. R. Bankr. P. 2004 ....................................................................... *Passim*

Fed. R. Civ. P. 26 .................................................................................. 19

Fed. R. Bankr. P. 9024 ............................................................................ 6

Fed. R. Civ. P. 60(B)(6) ........................................................................ 6, 7

The Official Committee of Equity Securities Holders (the "Equity Committee" or "Appellant") appeals the December 18, 2023 order (the "Order") denying the Equity's Committee's motion (the "Rule 2004 Motion" or "Motion") for Rule 2004 of the Federal Rules of Bankruptcy Procedure discovery that was entered by the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  For the following reasons, the Equity Committee respectfully requests that this Court reverse the Order of the Bankruptcy Court.

## JUDICIAL STATEMENT

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 158(a) because this is an appeal of an order denying Appellant's Motion and the relief requested therein.  Appellant timely filed this notice of appeal on January 4, 2024.

## STATEMENT OF ISSUES

1.  Issue 1: Did the Bankruptcy Court err in denying the Rule 2004 Motion?

2.  Issue 2: Did the Bankruptcy Court err in finding that the Equity Committee did not demonstrate good cause to conduct the requested Rule 2004 examination?

## STANDARD OF REVIEW

This Court exercises jurisdiction over the pending appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  A district court reviews findings of fact by a bankruptcy court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact *de novo*.  *See Young v. DiFerrante*, 416 B.R. 612, 615 (S.D. Tex. 2009).

## THE NATURE AND STAGE OF THE PROCEEDING

This appeal arises from the Debtors' *Motion for Protective Order Regarding First Request for the Production of Documents from the Official Committee of Equity Securities Holders to*

*Debtors* [Appellant's Design. 10][1] (the "<u>Protective Order Motion</u>"), which was filed on November 13, 2023.  The Protective Order Motion requested entry of an order relieving the Appellees from responding to the *First Request for the Production of Documents from the Official Committee of Equity Securities Holders to Debtors*, dated November 10, 2023.

In response to the Protective Order Motion, the Equity Committee filed the *Equity Committee's (I) Objection to the Debtors' Motion for Protective Order Regarding the Equity Committee's First Request for Production of Documents and the Joinder Thereto of Elizabeth C. Freeman and the Law Office of Liz Freeman PLLC or, in the Alternative, (II) Emergency Motion for Entry of an Order Authorizing and Directing Discovery from the Debtors and Elizabeth C. Freeman Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Appellant's Design. 13].  The Rule 2004 Motion requested the entry of an order (i) authorizing and empowering the Equity Committee to conduct discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Rule 2004</u>"), and (ii) directing the Debtors and Ms. Freeman to produce promptly certain documents and communications requested by the Equity Committee.

On December 18, 2023, the Bankruptcy Court heard the Protective Order Motion and the Rule 2004 Motion.  At that hearing, the Bankruptcy Court announced its oral ruling denying the Rule 2004 Motion.  Later that day, the Bankruptcy Court entered an order providing that it was denying the Rule 2004 Motion "[f]or the reasons stated on the record at the hearing[.]"  *See* Appellant's Design. 19, Order at 1.

Appellant timely filed this notice of appeal on January 4, 2024.  This is Appellant's opening brief.

---

[1]   References to "Appellant's Design." herein refer to the items listed by "Item No." in Appellant's *Statement of Issues and Designation of Items to Be Included on Appeal*, filed at Docket No. 2 in the instant appeal.

**RELEVANT BACKGROUND**

**I.     The Equity Committee and the Chapter 11 Cases.**

On February 13, 2023 (the "Petition Date"), the debtors in the jointly administered cases captioned *In re Sorrento Therapeutics, Inc.*, *et al.*, Case No. 23-90085 (CML) (Bankr. S.D.TX. February 13, 2023) filed voluntary petitions in the Bankruptcy Court (the "Chapter 11 Cases").

The impetus for these Chapter 11 Cases was a $175 million litigation judgment (the "Nant Judgment")[2] entered against the Debtors on December 2, 2022 in favor NantCell, Inc., and Immunotherapy NANTibody LLC (together with their affiliates, the "Nant Parties").  The Nant Judgment is the result of yearslong disputes between the Debtors and one of its main competitors – Dr. Patrick Soon-Shiong and companies that he purportedly controlled – concerning various sale, joint venture, and licensing transactions.

Upon the Debtors filing, the Chapter 11 Cases were assigned to former United States Bankruptcy Judge David R. Jones pursuant to the Procedures for Complex Cases in the Southern District of Texas.

On March 30, 2023, the Court entered an agreed order directing the United States Trustee (the "U.S. Trustee") to appoint an official committee of equity holders, and on April 10, 2023, the U.S. Trustee appointed the Equity Committee.  The Equity Committee was later reconstituted on April 14, 2023.

**II.    Elizabeth Freeman's Relationship with Judge Jones.**

Elizabeth Freeman served as a judicial law clerk for Judge Jones for approximately six years.  As has been well documented in judicial filings and by news outlets, Judge Jones is in an intimate relationship with Elizabeth Freeman, and they have cohabited (living in the same house

---

[2]    *See Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions* [Appellant's Design. 1] ¶¶ 6, 44.

3

or home) since approximately 2017.  Their undisclosed intimate relationship remained secret until the press—and Judge Jones himself—confirmed their long-term relationship publicly.  In an interview with the *Wall Street Journal*, Judge Jones acknowledged he had been in a relationship with Ms. Freeman for years and lived with Ms. Freeman.  Judge Jones initially contended he had no duty to disclose their relationship nor that he and Ms. Freeman shared a home despite the fact the Jackson Walker LLP law firm ("Jackson Walker") had cases pending before him because, in his opinion, he and Freeman were not married.

Ms. Freeman was a partner at Jackson Walker from at least 2017 until December 2022, and appeared in numerous cases before Judge Jones without disclosing her relationship with Judge Jones.[3]  During the pendency of those cases, Judge Jones granted numerous Jackson Walker fee applications without disclosing his romantic relationship with Ms. Freeman.[4]  To the Equity Committee's knowledge, neither Jackson Walker or Ms. Freeman disclosed their relationship at any point, including in Jackson Walker's retention applications.[5]

In March 2021, in an adversary proceeding in the case of *In re McDermott Int'l, Inc.*, Case No. 20-30336 (Bankr. S.D. Tex.), a *pro se* litigant alleged an intimate relationship between Judge Jones and Ms. Freeman.  In that case, Jackson Walker served as debtor's counsel.  On October 4, 2023, the same *pro se* litigant sued Judge Jones in the United States District Court for the Southern District of Texas for his conduct in the *McDermott* case.

On October 13, 2023, Chief Judge Priscilla Richman of the United States Court of Appeals for the Fifth Circuit entered the Fifth Circuit Complaint.  The Fifth Circuit Complaint concluded that, after conducting an inquiry, "there [was] probable cause to believe that misconduct by Judge

---

[3]   *See* Appellant's Design. 23, Fifth Circuit Complaint at 1.

[4]   *See id.*

[5]   *See id.*

4

Jones has occurred" due to Judge Jones's and Ms. Freeman's undisclosed romantic relationship.[6]  Specifically, an "intimate relationship" was ongoing between Judge Jones and Ms. Freeman despite Jackson Walker professionals "regularly appear[ing] before Judge Jones since 2017."[7]  According to the Fifth Circuit Complaint, Judge Jones "approved attorneys' fees payable to that firm in which supporting documentation, that was submitted to Judge Jones and is part of public records, reflected that services by Elizabeth Freeman were performed in connection with a number of cases for which fees were sought and approved, though Elizabeth Freeman was not shown as counsel of record on the face of pleadings."[8]  The Chief Judge went on to opine that the approved fess for Jackson Walker "were [] substantial," and that there was "a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones."[9]

On October 13, 2023, Judge Jones announced he would step back from hearing complex Chapter 11 cases given the foregoing ethics investigation by the Fifth Circuit.  The United States Bankruptcy Court for the Southern District of Texas then entered General Order 2023-10, which removed Judge Jones from the complex case panel and reassigned his existing complex cases to Judges Christopher M. Lopez and Marvin Isgur.  On October 16, 2023, Judge Jones submitted his resignation from the Bankruptcy Court, effective November 15, 2023.

In early November 2023, the Office of the United States Trustee for Region 7 filed motions related to almost two dozen cases over which Judge Jones presided before his resignation.[10]  The

---

[6]    Appellant's Design. 23, Fifth Circuit Complaint at 1.

[7]    *Id.* at 2.

[8]    *Id.*

[9]    *Id.*

[10]   *See, e.g.,* United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule Of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses, *In re Westmoreland Coal Co., et al.*, Case No. 18-35672 (Bankr. S.D. Tex.) (Nov. 2, 2023) [Appellant's Design. 25].

motions, which remain pending, seek, among other things, the claw-back of compensation awards to Jackson Walker that Judge Jones approved. The U.S. Trustee explains that "Judge Jones presided over at least 26 cases, and perhaps more, where he awarded Jackson Walker approximately $13 million in compensation and expenses while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship."[11] These cases "include[] approximately $1 million in fees billed by Ms. Freeman herself in 17 of those cases."[12] For example, in the case of *In re Chesapeake Energy Corp.* alone, Judge Jones approved fees attributable to Ms. Freeman totaling nearly $200,000.[13] The U.S. Trustee explains that it determined that "[b]ecause of Judge Jones's failure to recuse himself from presiding over cases where Jackson Walker was counsel for the debtors-in-possession while Ms. Freeman was both living with him and a partner at Jackson Walker, all orders awarding fees and expenses are tainted and should be set aside under Rule 60(b)(6) [of the Federal Rules of Civil Procedure] because this new information reveal[s] a compromised process."[14] According to the U.S. Trustee, "Judge Jones's, Ms. Freeman's, and Jackson Walker's actions have injured the Court and cast a cloud on dozens of bankruptcy proceedings."[15]

On November 13, 2023, Jackson Walker filed a statement in *In re Basic Energy Services, Inc., et al.*, Case No. 21-90002 (CML) (Bankr. S.D. Tex. 2021), stating that the firm had received information concerning Ms. Freeman's relationship with Judge Jones through a *pro se* litigant's filings in "March of 2021."[16] According to Jackson Walker, Ms. Freeman "denied the charge of

---

[11]   *Id.* ¶ 5.

[12]   *Id.*

[13]   *Id.* at Ex. 6.

[14]   *Id.* ¶ 5.

[15]   *Id.* ¶ 57.

[16]   *See* Appellant's Design. 24, Jackson Walker's Response to Filings by the U.S. Trustee ¶ 2.

a current romantic relationship but admitted to a past relationship which had ended."[17]  Ms. Freeman purportedly notified Jackson Walker that there had been a romantic relationship between her and Judge Jones "well in the past."[18]

However, in its statement, Jackson Walker maintains that the firm "did not know of any ongoing intimate relationship between Ms. Freeman and Judge Jones *until 2022* when it learned, quite by accident, that Ms. Freeman's denial was possibly false or at least no longer true."[19]  In other words, Jackson Walker learned Ms. Freeman had an intimate relationship with Judge Jones *two years ago*, but also knew she was in a current, ongoing relationship with Judge Jones *one year ago*, and before the Debtors commenced the Chapter 11 Cases in February 2023.

As a result of her then-revealed relationship with Judge Jones, Ms. Freeman claims that she left Jackson Walker and opened her own law firm, the Law Office of Liz Freeman PLLC.[20]

## III.   Ms. Freeman's Involvement in the Chapter 11 Cases.

Prior to the Petition Date, the Law Office of Liz Freeman PLLC was engaged by Jackson Walker and was paid for prepetition work on behalf of the Debtors.[21]  The foregoing was never disclosed to the Court, including after Judge Jones's resignation.

On March 14, 2023, the Debtors filed an application seeking to retain Latham & Watkins LLP ("Latham") as co-counsel to the Debtors.  The Court approved Latham's retention as co-counsel to the Debtors on April 13, 2023.[22]  Latham maintains an office in Houston, Texas.

---

[17]   *See id.*

[18]   *See id.* ¶ 15.

[19]   *See id.* ¶ 2 (emphasis added).

[20]   *See id.* ¶¶ 17-18.

[21]   *See* Appellant's Design. 11, Joinder ¶ 3.

[22]   *See Order Authorizing the Employment and Retention of Latham & Watkins LLP as Bankruptcy Co-Counsel* [Appellant's Design. 3] (the "Latham Retention Order").

7

On March 15, 2023, the Debtors filed an application seeking to retain Jackson Walker as co-counsel and "conflicts counsel" to the Debtors.[23]   The Court approved Jackson Walker's retention as co-counsel and conflicts counsel on April 27, 2023.[24]   The Jackson Walker Retention Application asserted that the firm should be retained as co-counsel and conflicts counsel to the Debtors due to its "complex chapter 11 experience, as well as its extensive practice before this Court and its knowledge of the Bankruptcy Local Rules and practices" that "make it substantively and geographically ideal to efficiently serve the needs of the Debtors."[25]   It further claimed it would "provide legal advice and services regarding local rules, practices, and procedures."[26]

Jackson Walker's engagement letter (the "Jackson Walker Engagement Letter") provided that it may engage outside counsel to serve as special conflicts counsel.  *Despite the fact that Jackson Walker knew, by its own admission, of the ongoing relationship between Ms. Freeman and Judge Jones*, Jackson Walker "strongly" recommended that Ms. Freeman be engaged as special conflicts counsel for the Debtors:

> **CONFLICTS COUNSEL AND SPECIAL COUNSEL**.  The Firm from time to time engages outside conflicts counsel to serve as special conflicts counsel "Conflicts Counsel," now and as the need may arise.  Due to the number of banking relationships, and utility providers, the need for Conflicts Counsel is imperative, and should be retained concurrently with the Firm.  At this time, the Firm strongly recommends the engagement of the Law Office of Liz Freeman as Conflicts Counsel.  Ms. Freeman's hourly rate is $750/hour.  Ms. Freeman will send a short form of engagement letter by separate cover.

*Id.*, Ex. A at 3.

The Jackson Walker Retention Application discloses that Jackson Walker conducted a conflicts check that included several of the Nant Parties.  The Jackson Walker Retention

---

[23]   *See Application to Retain Jackson Walker LLP As Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession* [Appellant's Design. 2] (the "Jackson Walker Retention Application").

[24]   *See Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-In-Possession* [Appellant's Design. 5] (the "Jackson Walker Retention Order").

[25]   Appellant's Design. 2, Jackson Walker Retention Application ¶ 9.

[26]   *Id.* ¶ 10.

Application, however, *does not disclose any conflicts with the Nant Parties.* Oddly, and in contrast to any purported conflict with any of the Nant Parties, the Jackson Walker Retention Application listed potential conflicts with a host of other parties in interest, including banks, insurance companies, vendors, customers, lenders, and creditors.[27] The Jackson Walker Engagement Letter additionally disclosed that the following entities may have claims against Sorrento: the State of Texas (and all related entities), Exelon Entities, ACE Insurance, Chubb Insurance, Bank of America, Goldman Sachs, Wells Fargo, JPMorgan Chase Bank, NA, US Bank, BMO Harris Bank, and Regions Bank.[28]

On April 14, 2023, the Debtors filed an additional retention application seeking to employ Tran Singh LLP ("Tran Singh") as "conflicts counsel" to the Debtors.[29] According to the Tran Singh Retention Application, "[t]he retention of Tran Singh as conflicts counsel was contemplated in February 2023," or the same month the Debtors first commenced these Chapter 11 Cases.[30] Further, Tran Singh stated that "[t]he Debtors seek to retain the Firm . . . because of the Firm's . . . extensive practice before this Court and knowledge of the Bankruptcy Local Rules and practices[.]"[31] As it pertains to conflicts, the Tran Singh Retention Application disclosed that it was free of any conflicts whatsoever, thus seemingly meriting their retention as "conflicts counsel": "Tran Singh has not represented any of the Debtors' creditors or other entities that may

---

[27]   *See id.*, Ex. B, Schedule 2

[28]   *See id.*, Ex. A at 2-3.

[29]   *See Debtors' Application for Entry of an Order Authorizing the Employment of Tran Singh LLP As Conflicts Counsel to the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Appellant's Design. 4] (the "Tran Singh Retention Application").

[30]   *Id.* ¶ 22.

[31]   *Id.* ¶ 11.

be parties in interest in ongoing matters related to the Debtors and these Chapter 11 Cases."[32]

Judge Jones approved Tran Singh's retention on May 9, 2023.[33]

Since the commencement of the Chapter 11 Cases, the fee statements and time entries filed by Latham and Jackson Walker in the Chapter 11 Cases have not been digitally searchable. Notably, when Judge Jones approved the uncontested retention applications of both firms, he unilaterally struck language from both Latham's and Jackson Walker's proposed retention orders that would have required the firms to file their time entries in a searchable, electronic format.[34]

A manual review of Latham and Jackson Walker's monthly fee statements reveals that Latham and Jackson Walker were in contact with Ms. Freeman since at least the Petition Date concerning numerous issues, including litigation strategy, sale processes, and the mediation between the Nant Parties and the Debtors:

- On February 13, 2023, Caroline Reckler of Latham spoke with Ms. Freeman regarding "mediation" and "litigation strategy."[35]

- On March 13, 2023, John J. DeMeulenaere of Latham held a conference call with Ms. Freeman regarding "UCC reconstitution."[36]

- On March 17, 2023, Christina M. Craige of Latham discussed "Nant-related litigation issues" with Ms. Freeman.[37]

---

[32] *Id.*, Ex. B ¶ 12.

[33] *See Order Authorizing the Employment of Tran Singh LLP as Conflicts Counsels to the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Appellant's Design. 6].

[34] *See* Appellant's Design. 3, Latham Retention Order ¶ 3; Appellant's Design. 5, Jackson Walker Retention Order ¶ 2.

[35] *See First Combined Monthly Fee Statement of Latham & Watkins LLP for Compensation for Services Rendered and for Reimbursement of Expenses as Bankruptcy Co-Counsel to the Debtors for the Period from February 13, 2023 Through March 31, 2023* [Appellant's Design. 7] ("Latham's First Fee Statement"), Ex. D at 5.

[36] *See id.*, Ex. D at 58.

[37] *See id.*, Ex. D at 26.

- On April 4, 2023, Kristhy M. Peguero of Jackson Walker conferred with Ms. Freeman regarding a 2004 order.[38]

- On April 12, 2023, Christina M. Craige, Andrew Clark, and Caroline Reckler of Latham (and others) corresponded with Ms. Freeman regarding "mediation" and "discovery."[39]

- During a call on April 18, 2023, Caroline Reckler of Latham discussed the "sale process" with Ms. Freeman.[40]

Notably, while all of these communications involved key events in these Chapter 11 Cases, *none* of the issues that counsel for the Debtors discussed with Ms. Freeman—including the Debtors' dispute with the Nant Parties—involved matters or parties that necessitated Ms. Freeman's involvement as "conflicts counsel."[41]

Furthermore, upon information and belief, Latham specifically ensured that Ms. Freeman was copied on certain communications between the Debtors and the Nant Parties relating to the mediation *notwithstanding the fact that Jackson Walker did not have any conflicts with the Nant Parties* as purported in the Jackson Walker Retention Application.

On October 19, 2023, the Debtors filed a proposed plan of liquidation (the "Plan").  On November 10, 2023, the Equity Committee filed its objection to the proposed Plan (the "Plan Objection), arguing that the terms of the Liquidation Trust as set forth in the Plan and the scope of the Plan's exculpation provision violate the Bankruptcy Code.  The Equity Committee's objection contained a reservation of rights to supplement the Plan Objection and amend the statements made

---

[38]  *See Jackson Walker LLP's Second Monthly Fee Statement for Compensation of Services Rendered and Reimbursement of Expenses as Counsel to the Debtor for the Period from April 1, 2023 Through April 30, 2023* [Appellant's Design. 9] ("Jackson Walker's Second Fee Statement"), Ex. C at 1.

[39]  *See Second Monthly Fee Statement of Latham & Watkins LLP for Compensation for Services Rendered and for Reimbursement of Expenses as Bankruptcy CoCounsel to the Debtors for the Period from April 1, 2023 Through April 30, 2023* [Appellant's Design. 8] ("Latham's Second Fee Statement"), Ex. D at 37; Jackson Walker's Second Fee Statement, Ex. C at 5.

[40]  *See* Appellant's Design. 8, Latham's Second Fee Statement, Ex. D at 19.

[41]  *See* Appellant's Design. 2, Jackson Walker Retention Application, Ex. A at 3.

therein at any time prior to or at the Confirmation Hearing, and to raise additional or further objections to the Proposed Plan at the Confirmation Hearing.

## IV.    The Equity Committee Requests Additional Information Concerning Ms. Freeman's Involvement in the Chapter 11 Cases.

On November 2, 2023, upon learning of Judge Jones's and Ms. Freeman's relationship, counsel for the Equity Committee emailed Latham, asking it to confirm whether Ms. Freeman had a role in representing Sorrento prior to the Petition Date.[42]  Latham responded that it was "aware that Liz Freeman worked on Sorrento" and noted that Jackson Walker had "the details."[43]

On November 7, 2023, counsel for the Equity Committee sent a letter to Latham, copying Jackson Walker, apprising them of the Equity Committee's concerns that Ms. Freeman was involved in the Debtors' mediation with the Nant Parties for improper purposes, including seeking to communicate with and influence Judge Jones *ex parte* to exploit her relationship with Judge Jones, the disclosure of confidential mediation information to Judge Jones, and influencing the outcome of the mediation as well as the administration of the Chapter 11 Cases in general.  The Equity Committee therefore requested that the Debtors provide information regarding (i) the nature and extent of Ms. Freeman's involvement in the Chapter 11 Cases, particularly the disputes and mediation with the Nant Parties, (ii) why the Debtors sought her involvement in these matters, (iii) whether Ms. Freeman had *ex parte* communications with Judge Jones about the Debtors and the Chapter 11 Cases, and (iv) whether attorneys at Latham were aware of her romantic relationship with Judge Jones before the Fifth Circuit Complaint was filed.[44]  The Equity Committee further requested that the Debtors institute a litigation hold.[45]

---

[42]    *See* Appellant's Design. 10, Protective Order Motion, Ex. C-1.

[43]    *See id.*, Ex. C-2.

[44]    *See id.*, Ex. C-7.

[45]    *See id.*, Ex. C-7.

In an email dated November 7, 2023, Jackson Walker claimed that Ms. Freeman "was asked questions about local practice and procedure a few times, but she was not retained and has not billed or received any payments in this case."[46]

In a letter dated November 9, 2023, Latham asserted that the nature and extent of Ms. Freeman's involvement in the Chapter 11 Cases was "addressed directly" by Jackson Walker's response.[47]   Latham also claimed it was unaware of the relationship between Judge Jones and Ms. Freeman prior to it being discussed in the media.[48]   It further refused to explain why the Debtors chose to involve Ms. Freeman in the Chapter 11 Cases.[49]   Finally, Latham suggested that the Equity Committee's question about whether Ms. Freeman had *ex parte* communications with Judge Jones should be directed to Ms. Freeman.[50]

On November 9, 2023, the Equity Committee emailed Latham, noticing a formal objection (the "Fee Objection") to Latham's fee statement for the month of September 2023.   In the email, the Equity Committee explained that its Fee Objection was based, in part, on suspected misconduct in the administration of the Chapter 11 Cases and the Equity Committee's resulting (and ongoing) investigation into the Debtors' professionals' fees.[51]

On November 10, 2023, the Equity Committee served document requests (the "Document Requests") on the Debtors seeking information regarding (i) any conflicts of Latham and Jackson Walker that would require Ms. Freeman's retention, and (ii) Ms. Freeman's role in the Chapter 11 Cases, knowledge of matters concerning the Chapter 11 Cases, communications with Latham and

---

[46]   *See id.*, Ex. C-9.
[47]   *See id.*, Ex. C-13-14.
[48]   *See id.*
[49]   *See id.*
[50]   *See id.*
[51]   *See id.*

Jackson Walker, and personal relationships with Latham and Jackson Walker.[52] The Equity Committee also served Document Requests on Ms. Freeman seeking the same information, as well as all communications between Ms. Freeman and Judge Jones concerning the Debtors or the Chapter 11 Cases.

During a meet-and-confer on November 11, 2023, Latham claimed that the Equity Committee should limit its Document Requests to matters addressed in the Plan Objection. In response, counsel to the Equity Committee explained that the Document Requests were indisputably relevant to the Plan and the Equity Committee's Plan Objection because any impropriety in the administration of the Chapter 11 Cases implicates plan confirmation issues and the relief requested in the Plan. Counsel further conveyed the Equity Committee's belief that sweeping these issues under the proverbial rug ahead of plan confirmation—and notwithstanding the known and documented facts about Ms. Freeman's involvement in these Chapter 11 Cases— would be unconscionable.

Also on November 11, 2023, counsel for the Equity Committee sent an email to Henry Ji, the Chairman, President, and Chief Executive Officer of Sorrento and the Executive Chairman of Scilex, and counsel, requesting that the Debtors' board waive any privileges relating to any communications with Ms. Freeman, so that the Equity Committee might view those communications, including text messages, and determine whether there was any inappropriate conduct relating to Judge Jones. In response, Caroline Reckler of Latham demanded that all future communications regarding this topic be directed *only* to Latham.[53]

---

[52]   *See* Appellant's Design. 13, Rule 2004 Motion, Exs.C and D.
[53]   *See* Appellant's Design. 13, Rule 2004 Motion, Ex. E.

On November 13, 2023, the Debtors filed the Protective Order Motion, seeking entry of a protective order in connection with the Document Requests.  On November 16, 2023, Ms. Freeman filed a joinder [Appellant's Design. 11] (the "Joinder") seeking to quash the Equity Committee's Document Requests.  On November 27, 2023, the Equity Committee filed a joint objection to the Protective Order Motion and the Rule 2004 Motion.

On November 30, 2023, and before the Bankruptcy Court considered the Rule 2004 Motion, the Bankruptcy Court entered an order confirming the Debtors' Chapter 11 plan of liquidation.

**V.    The Court Denies the Rule 2004 Motion.**

On December 18, 2023 (the "December 18 Hearing"), the Court held a hearing on the Equity Committee's Rule 2004 Motion.  That same day, the Court entered an order that, "[f]or reasons stated on the record at the hearing held on December 18, 2023, the Equity Committee's motion for a Rule 2004 examination is denied."  Appellant's Design. 19, Order at 1.

At the December 18 Hearing, the Court summarized its ruling as follows:

> You're asking me whether a 2004 -- and I know that there are other matters that are being investigated now, right, that are not in front of me now that are being handled in front of -- where the United States Trustee is taking -- is conducting an investigation as to matters. And those matters will run their course. I see matters that are handled in other courts.

> I don't see the need for a 2004 now.  I don't see it.  I've heard what's happening. . . . The equity committee, at all stages, has been involved. And they've been an active participant in what is going on, and you can't act like you haven't been there. . . . The question is do I grant a 2004 exam based upon the facts and the history that I have here. And the answer is no.  The road to a 2004 is not unlimited. . . . I think the equity committee had every right to come in and ask for it. I've got to look at the whole case.

Appellant's Design. 20, Hr. Tr. 54:14-55:23 (Lopez, J.).

Also at the December 18 Hearing, the Court made the following observation:

> Latham has expressed in writing to the equity committee -- and apparently to the United States Trustee that it [] -- had no knowledge of anything in the matters with

respect to former Judge Jones before it was discussed in the media. I take them at their word. They're officers of the court, and I take them at their word, and I have no evidence in front of me to suggest otherwise.

Appellant's Design. 20, Hr. Tr. 15:17-23 (Lopez, J.).

## SUMMARY OF ARGUMENT

Reversal of the Bankruptcy Court's Order is proper.  The Equity Committee demonstrated good cause to conduct its requested discovery, and the reasons the Bankruptcy Court provided in its bench ruling were insufficient to deny the Motion.  The Bankruptcy Court articulated no reason and cited no legal authority for why the information sought by the Equity Committee was not discoverable pursuant to Rule 2004 as a matter of law.  Moreover, the Equity Committee timely filed the Rule 2004 Motion.  Finally, the Bankruptcy Court did not find the Document Requests were intrusive or would cause undue hardship on Appellees.  Accordingly, the Bankruptcy Court erred and its Order should be reversed.

## ARGUMENT

**I.**     **Rule 2004 Legal Standards.**

Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  Such examination allows parties "to conduct discovery into matters affecting the estate."  *In re Teleglobe Comm'ns Corp.,* 493 F.3d 345, 354 n.6 (3d Cir. 2007).  The examination may relate to "any matter which may affect the administration of the debtor's estate. . . [and, in] a reorganization case under chapter 11 . . . *and any other matter relevant to the case* or to the formulation of a plan."  Fed. R. Bankr. P. 2004(b) (emphasis added).

The scope of a Rule 2004 examination is "virtually unlimited."  *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988); *see In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018) ("the scope of a Rule 2004 examination is exceptionally broad").  Indeed, courts have recognized that

Bankruptcy Rule 2004 "allows an unrestrained fishing expedition."  *In re Kipp*, 86 B.R. at 491; *see also In re Correra*, 589 B.R. at 109 (noting that discovery under Rule 2004 "is broader than that available under the Federal Rules of Civil Procedure" and "is commonly recognized as more in the nature of a fishing expedition").

Granting a motion pursuant to Bankruptcy Rule 2004 is within the discretion of the Court. *See In re Gawker Media LLC*, Case No. 16-11700 (SMB), 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017) ("Rule 2004 gives the Court 'significant' discretion") (internal citation omitted).  In assessing motions for examination under Bankruptcy Rule 2004, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination[,]" *In re China Fishery Grp. Ltd.,* Case No. 16-11895 (JLG), 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017), and look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5. The purpose of the request and its degree of intrusiveness are relevant to this determination.  *See In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711-12 (Bankr. S.D.N.Y. 1991).

Finally, a legitimate goal of Rule 2004 examinations is "determining whether wrongdoing has occurred."  *In re Correra*, 589 B.R. at 109; *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (same).  Good cause exists where the information sought is necessary for the party seeking examination or where denial of the request "would cause the examiner undue hardship or injustice." *In re Gawker Media LLC,* 2017 WL 2804870, at *5.

## II.    The Bankruptcy Court Erred by Denying the Rule 2004 Motion.

Citing no case law or legal authority, the Bankruptcy Court denied the Equity Committee's request for limited Rule 2004 discovery.  But the Equity Committee demonstrated good cause to conduct its requested discovery, and the reasons the Bankruptcy Court provided in its bench ruling

were insufficient to deny the Motion.  As discussed below, the Bankruptcy Court's Order should be reversed for several independent reasons.

First, and as a threshold matter, the Bankruptcy Court articulated no reason for why the information sought by the Equity Committee was not discoverable pursuant to Rule 2004 as a matter of law.  Rule 2004 examinations can be exceptionally broad, unfettered, and more extensive than any discovery tool under the Federal Rules of Civil Procedure.  *See In re Merrill*, 2010 WL 985231, at *2 (Bankr. W.D. Tex. Mar. 16, 2010) ("The scope of relevance in a Rule 2004 examination is substantially broader than that of ordinary discovery."); *In re Martin*, 403 B.R. 359, 362 (Bankr. D.S.C. 2009) ("Because Rule 2004 examinations are independent of a complaint or contested matter, the examination need not be tied to specific factual allegations and is subject to fewer objections on grounds of relevance that apply to discovery under Fed. R. Civ. P. 26.").

The Bankruptcy Court's ruling, however, articulated no grounds for why the Equity Committee should be deprived of this "pre-litigation tool," which was indisputably its right to exercise in the Chapter 11 Cases.  *See In re Barnes*, 365 B.R. 1, 3 (Bankr. D.D.C. 2007) (describing Rule 2004 examinations as a "pre-litigation tool" to be utilized "with respect to [] potential proceedings").  More still, the Equity Committee is aware of no legal requirement that there must first be "smoke" to grant Rule 2004 discovery, as the Bankruptcy Court reasoned.  *See* Hr. Tr. 24:15-25 (Lopez, J.).  Indeed, and as noted above, a legitimate goal of Rule 2004 examinations is determining whether wrongdoing ever occurred in the first instance.  *In re Correra*, 589 B.R. at 109 ("Legitimate goals of Rule 2004 examinations include . . . determining whether wrongdoing has occurred.") (internal quotations omitted).

Second, the Bankruptcy Court erred in ruling that the Equity Committee had not demonstrated good cause for discovery.  The Equity Committee as an estate fiduciary and a "party

18

in interest" under Rule 2004 sought to review documents and communications relating to Ms. Freeman's role in the Chapter 11 Cases.  The Equity Committee's goal was to determine whether the Debtors engaged in any wrongdoing that may affect the administration of the Chapter 11 Cases or indicated that the proposed Plan was not formulated in good faith.  To that end, the Document Requests sought information necessary to substantiate or alleviate the Equity Committee's concerns that the Debtors, by specifically requesting Ms. Freeman's retention and actively seeking her legal advice, sought to use Ms. Freeman's relationship with Judge Jones to improperly affect the outcome of the Chapter 11 Cases.  *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 399 (Bankr. W.D. Pa. 2008) (party in interest made sufficient showing of "good cause" to obtain document production by showing potential wrongdoing).  Such possible interference is exactly the type of conduct worthy of Rule 2004 discovery.

Third, the fact the Equity Committee was an "active participant" in the Chapter 11 Cases or "living this case for nine months" before it filed the Rule 2004 Motion – a primary finding made by the Bankruptcy Court in its ruling – has no bearing on whether the Motion should have been granted.  Hr. Tr. 54:21-55:10 (Lopez, J.).  Indeed, the text of Rule 2004 itself assures that Rule 2004 examinations of a debtor may occur "at any time," and otherwise provides no time limitation for when Rule 2004 motions must be brought.  *See* Fed. R. Bankr. P. 2004(d) ("The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates[.]"); *In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 451 (Bankr. S.D.N.Y. 2022) (Rule 2004 "provides a freestanding mechanism for discovery regarding the Debtor's estate [] that need not be brought in connection with any pending causes of action").  Here, the Equity Committee first began its investigation as early as November 2, 2023 upon learning of Judge

19

Jones's and Ms. Freeman's relationship.  If anything, the Equity Committee worked expeditiously in pursuing its investigation upon learning of the revelations.

Fourth, the Bankruptcy Court did not find the Document Requests were intrusive or would cause undue hardship on Appellees.  *See In re Gawker Media LLC,* 2017 WL 2804870, at *5. Instead, the Bankruptcy Court merely reasoned that we should "take [Appellees] at their word" that no interference or wrongdoing occurred because "[t]hey're officers of the court" and should thus escape Rule 2004 discovery.  *See* Hr. Tr. 15:17-23 (Lopez, J.).  That reasoning is not sufficient, lacks any legal basis in Rule 2004, and ignores the fact the Document Requests were narrowly tailored to not be burdensome.  *Cf. In re Appalachian Basin Cap. LLC,* 2022 WL 2111815, at *4 (Bankr. N.D. Ohio June 9, 2022) (Rule 2004 discovery should not "harass or abuse" nor be "costly to the examinee").

Accordingly, and for each of these independent reasons, the Bankruptcy Court's order should be reversed.

## CONCLUSION

For the forgoing reasons, the Equity Committee respectfully requests that this Court reverse the Bankruptcy Court's December 18, 2023 Order denying the Rule 2004 Motion and grant the Equity Committee such other and further relief to which it may be entitled.

*[Signature Page Follows]*

Dated: March 20, 2024

**GLENN AGRE BERGMAN & FUENTES LLP**

By: */s/ Andrew K. Glenn*
Andrew K. Glenn
Kurt A. Mayr
Shai Schmidt
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 970-1601
Email: aglenn@glennagre.com
kmayr@glennagre.com
sschmidt@glennagre.com

*Counsel to the Appellant*

## CERTIFICATE OF SERVICE

  I certify that, on March 20, 2024, I caused a copy of the foregoing document to be filed and served by the Court's Electronic Case Filing System, which will deliver notice to all parties of record.

*/s/ Andrew K. Glenn*
Andrew K. Glenn